**ORAL ARGUMENT NOT YET SCHEDULED**

Case No. 21-1024 (consolidated with No. 21-1034)

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

CALIFORNIA COMMUNITIES AGAINST TOXICS, *et al.*,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,

*Respondents*.

---

# STATE PETITIONERS' FINAL REPLY BRIEF

---


ROB BONTA
Attorney General of California
DEBORAH M. SMITH
ANNADEL A. ALMENDRAS
Senior Assistant Attorneys General
ABIGAIL BLODGETT
MYUNG J. PARK
Supervising Deputy Attorneys General

RYAN HOFFMAN
*KAVITA P. LESSER
JONATHAN A. WIENER
Deputy Attorneys General
300 South Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6605
Email: Kavita.Lesser@doj.ca.gov
*Attorneys for the State of California*


*(Counsel for Additional Petitioners Listed on Signature Pages)*

# TABLE OF CONTENTS


**Page**

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. State Petitioners Have Standing .......... 2

II. The Reclassification Rule Does Not Reflect the Best Reading of the Statute .......... 6

A. Section 112(a)'s Definitional Terms Cannot Be Read in Isolation. .......... 6

B. The Congressional Review Act Resolution Does Not Support EPA's Interpretation .......... 8

III. EPA's Failure to Address the Rule's Impact on its Compliance with Section 112(c)(6) is Arbitrary and Capricious .......... 11

CONCLUSION .......... 13

CERTIFICATE OF COMPLIANCE .......... 19

CERTIFICATE OF SERVICE .......... 20

## TABLE OF AUTHORITIES

**Page**

**CASES**


*Air Alliance Houston v. EPA*
906 F. 3d 1049 (D.C. Cir. 2018) .................................................... 3

*Arizona v. EPA*
77 F.4th 1126 (D.C. Cir. 2023)....................................................... 2

*Cal. Communities Against Toxics v. EPA*
928 F.3d 1041 (D.C. Cir. 2019) ................................................. 5, 6

*Cal. Communities Against Toxics v. EPA*
934 F.3d 627 (D.C. Cir. 2019) ....................................................... 5

*Loper Bright Enters. v. Raimondo*
603 U.S. 369 (2024)......................................................................... 1

*Motor Vehicle Mfrs. Ass'n v. State Farm*
463 U.S. 29 (1983)......................................................................... 11

*Nat'l Assn. of Clean Air Agencies v. EPA*
489 F. 3d 1221 (D.C. Cir. 2007) .................................................... 3

*Safari Club v. Haaland*
31 F.4th 1157 (9th Cir. 2022) ...................................................... 10

*Samantar v. Yousuf*
560 U.S. 305 (2010)......................................................................... 8

*Sierra Club v. E.P.A.*
755 F.3d 968 (D.C. Cir. 2014) ....................................................... 6

*Tozzi v. HHS*
271 F.3d 301 (D.C. Cir. 2001) ....................................................... 4

## TABLE OF AUTHORITIES
## (continued)

**Page**

### STATUTES

United States Code, Title 5
§ 802(a) ... 9
§ 802(d)(1)-(2) ... 9
§ 804(3) ... 9

United States Code, Title 42
§ 7412(c)(1), (d)(1)-(2) ... 7
§ 7412(c)(6) ... 11, 12
§ 7412(d)(2) ... 7
§ 7412(d)(2)(A) ... 7
§ 7412(d)(6) ... 8
§ 7412(f)(2) ... 8

Pub. L. No. 119-20, 139 Stat. 71 (2025) ... 9, 10

### FEDERAL REGISTER NOTICES

63 Fed. Reg 17,838 ... 12

76 Fed. Reg. 15,308 ... 12

80 Fed. Reg. 31,470 ... 12

85 Fed. Reg. 73,854 ... 6

88 Fed. Reg. 66,336 ... 10

89 Fed. Reg. 73,293 ... 12

## GLOSSARY

| | |
|---|---|
| EPA | Environmental Protection Agency |
| MACT | Maximum Achievable Control Technology |
| Once In, Always In Policy | Memorandum from John S. Seitz, Director, Office of Air Quality Planning and Standards, Environmental Protection Agency, "Potential to Emit for MACT Standards – Guidance on Timing Issues" (May 16, 1995). |
| Reclassification Rule | 85 Fed. Reg. 73,854 (Nov. 19, 2020) |
| Section 112 | 42 U.S.C. § 7412 |
| 2024 Rule | 89 Fed. Reg. 73,293 (Sept. 10, 2024) |

## INTRODUCTION

EPA asks the Court to uphold its "plain meaning" interpretation of Section 112 by relying on verb tense in the definition of "major source." But the task before the Court is not to construe what "major source" means in a vacuum. Rather, the Court should determine whether EPA's interpretation in the Reclassification Rule is supported by the entire text and structure of the statute. It is not.

EPA acknowledges that the Reclassification Rule will result in some major sources of hazardous air pollutants dropping out of maximum available control technology (MACT) standards, increasing emissions, and being no longer subject to ongoing residual risk and technological review. In other words, the Rule will undermine the operative provisions of a regulatory scheme designed to achieve the maximum degree of reduction of the pollutants Congress deemed especially harmful to human health. That cannot be the best reading of the statute. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). And contrary to EPA's assertions, Congress did not say otherwise—or anything else about the Reclassification Rule—when disapproving a different rule under the Congressional Review Act.

Finally, EPA fails to explain how it will meet its Section 112(c)(6) duty to list sufficient source categories to assure that 90 percent of emissions of particularly harmful pollutants remain subject to MACT standards. For these reasons, this Court should grant the petitions for review and hold that the Reclassification Rule is unlawful and arbitrary.

## ARGUMENT

### I. STATE PETITIONERS HAVE STANDING

Federal courts recognize standing when a federal rule leaves States "practically if not legally compelled to engage in conventional exercises of their police power" to avoid injury. *Arizona v. EPA*, 77 F.4th 1126, 1130 (D.C. Cir. 2023). Here, by weakening protections provided by the Clean Air Act and triggering the preexisting laws some State Petitioners have that come into effect when federal measures are deemed inadequate, the Rule imposes costly regulatory burdens on those State Petitioners. Andrews Decl. ¶¶ 34-39; Decl. of Rory Davis ¶¶ 7-9. And for those State Petitioners without such laws, the Rule forces a choice between either expending regulatory resources to fill the regulatory void created by the Rule *or* expending financial resources via public health care systems to address the inevitable harmful effects of

increased hazardous air pollution. The Rule injures them either way. And all State Petitioners with reclassifying facilities face losing information contained in federal "Title V" permits about sources of hazardous air emissions within their boundaries and the controls that apply to them. State Pet'rs.' Br. 22.

These injuries to State Petitioners in their regulatory capacities affect sovereign and proprietary interests, not just *parens patriae* interests, contra EPA Br. 15, and are cognizable for standing. *See Nat'l Assn. of Clean Air Agencies v. EPA*, 489 F. 3d 1221, 1227-28 (D.C. Cir. 2007)*; Air Alliance Houston v. EPA*, 906 F. 3d 1049, 1059-60 (D.C. Cir. 2018).

Nor are these injuries speculative. EPA's argument to the contrary relies heavily on its repeated and incorrect assertion that State Petitioners have not identified any sources within their jurisdictions that already reclassified and are still operating. EPA Br. 11, 16. In fact, one of State Petitioners' declarations identified 17 such facilities in Illinois alone, Davis Decl. ¶ 7, and explained that Illinois had to expend its regulatory resources to develop enforceable permitting limitations to ensure that those facilities, once they had shed their "major source"

label, would not emit *more* hazardous air pollution, *id*. ¶ 9. EPA appears to have entirely overlooked this declaration, mistakenly asserting that "no other State Petitioner has provided a standing declaration" besides California. EPA Br. 16.

The presence of just one Petitioner State with standing would be enough. *See Tozzi v. HHS*, 271 F.3d 301, 310 (D.C. Cir. 2001). But there are more. Indeed, EPA identified dozens of facilities that have reclassified in other Petitioner States. USEPA, Review of Final Rule—Reclassification of Major Sources as Area Sources Under Section 112 of the Clean Air Act, Draft List of MM2A Reclassifications as of August 2024 (Sept. 10, 2024), https://www.regulations.gov/document/EPA-HQ-OAR-2023-0330-0568 (showing 22 reclassified facilities in Wisconsin alone).[1]

[1] EPA's claim that only 15 California facilities "could theoretically reclassify," Br. 16, undercounts that number in two ways. First, that number represents California facilities that could reclassify based on current emissions *and* entirely avoid all Title V reporting requirements as well. *Compare* Andrews Decl. ¶ 23 ("at least 21" California facilities covered by major-source standards "have emissions currently below the major source threshold") *with id*. ¶ 28 ("15 of these 21" could cease all Title V reporting). Second, even facilities with emissions above the major source threshold now could lower their emissions and reclassify in the future, and in doing so potentially avoid revisions to MACT

(continued…)

And it is reasonable to expect more facilities to reclassify, in these and other Petitioner States, and many reclassifying facilities to increase their emissions, if the Rule is upheld and the "uncertainty over the long-term status" of reclassification is resolved. *Cal. Communities Against Toxics v. EPA*, 928 F.3d 1041, 1049 (D.C. Cir. 2019) ("*CCAT I*"). EPA suggests that facilities wanting to reclassify would have done so already in reliance on the 2018 Wehrum memo or the 2020 Rule. Br. 15-16. But the Wehrum Memo was non-final, and this Court held that "neither EPA nor any regulated source can rely on" it. *Cal. Communities Against Toxics v. EPA*, 934 F.3d 627, 637 (D.C. Cir. 2019) ("*CCAT II*"). And the 2020 Rule has been under a cloud of litigation and administrative reconsideration for as long as it has been effective. State Pet'rs.' Br. 14-15.

It is not speculative to think that, once the dust has settled, affected industries will likely take advantage of the very change in law "'for which they lobbied' EPA." *CCAT I*, 928 F.3d at 1049 (*quoting*

---

standards under Section 112(d)(6) that would otherwise drive their emissions even lower. *See* State Pet'rs.' Br. 28-29; *see also* Intv. Br. 33 (arguing Rule incentivizes voluntary process changes that could potentially be mandated in absence of Rule).

*Sierra Club v. E.P.A.*, 755 F.3d 968, 975 (D.C. Cir. 2014)). Indeed, affected industry groups claimed standing to intervene in this case precisely to avoid being "required to maintain compliance with standards and regulations" applicable to major sources, Mot. to Intervene of Brick Indus. Ass'n et al., ECF#1886084.

## II. THE RECLASSIFICATION RULE DOES NOT REFLECT THE BEST READING OF THE STATUTE

### A. Section 112(a)'s Definitional Terms Cannot Be Read in Isolation.

EPA asserts that because the definition of major source uses the present tense of the word "emit," meaning a source's current emissions level, "once a major source stops emitting" above the major source threshold, it is no longer a "major source." EPA Br. 19. This differs from EPA's previous claim that silence in the statutory definition of "major source" supports its interpretation that major sources can reclassify at any time. *See* 85 Fed. Reg. 73,854, 73,859. But it is equally misplaced.

EPA's reliance on "emit" within the definition of "major source" ignores how that term is used within the structure and context of Section 112. Section 112 establishes a step-by-step, chronological approach to regulating hazardous air pollutants. EPA is directed to first

“list” all categories of major sources and area sources, and then establish MACT standards for all major sources “listed” for regulation. 42 U.S.C. § 7412(c)(1), (d)(1)-(2). Read in context of the operative provisions, a “major source” therefore means a source that emits hazardous air pollutants above the major source threshold *at the time of listing*. *See* Envtl. Petr’s Reply Br. 15-17. The present tense of emit is not, as EPA contends, instructive as to whether a major source that is already “listed” and subject to MACT standards can escape MACT standards by reclassifying.

EPA’s definitional argument also conflicts with other provisions of the statute. For example, Section 112(d)(2) specifies that MACT standards must “require the maximum degree of reduction in emissions … including a prohibition on such emissions, where achievable.” *Id.* § 7412(d)(2). The degree of reduction achievable must be determined in part by considering the potential application of measures that “eliminate” emissions from major sources. *Id.* § 7412(d)(2)(A). EPA’s interpretation renders the terms “prohibition” and “eliminate” in that provision meaningless, because MACT standards can never prohibit or eliminate emissions if major sources can reclassify.

Likewise, EPA provides no meaningful response to State Petitioners' argument, Br. 27-30, that EPA's interpretation conflicts with Section 112's two-phase approach requiring EPA to periodically review technology-based MACT standards, 42 U.S.C. § 7412(d)(6), and to assess the health and environmental risks that remain after implementation of the MACT standards, 42 U.S.C. § 7412(f)(2). Indeed, EPA admits that the Reclassification Rule allows sources currently subject to MACT standards to reclassify and escape not only existing standards, but also any standards resulting from subsequent residual risk and technology reviews. EPA Br. 23, 27. Courts do not "construe statutory phrases in isolation," but must "read statutes as a whole." *Samantar v. Yousuf*, 560 U.S. 305, 319 (2010). EPA's reliance on verb tense for an interpretation that renders Section 112's operative provisions nonsensical must be rejected.

### B. The Congressional Review Act Resolution Does Not Support EPA's Interpretation

EPA is wrong to argue that Congress "affirmed" EPA's interpretation that major sources can reclassify and need not comply with MACT standards "when it disapproved the 2024 Rule under the

Congressional Review Act." EPA Br. 20 (citing Pub. L. No. 119-20, 139 Stat. 71 (2025) ("2025 CRA Resolution")); *see also* Intvr.-Resp'ts Br. 36-37. The 2025 CRA Resolution was limited to disapproving the 2024 Rule, and there is no reason to treat that resolution as in effect approving the earlier-promulgated Reclassification Rule at issue here. The 2025 CRA Resolution is thus not relevant to the issues presented here.

The Congressional Review Act establishes an expedited procedure for congressional review and disapproval of certain federal agency "rule[s]." 5 U.S.C. § 804(3). Motions, amendments, and debate are severely limited. 5 U.S.C. § 802(d)(1)-(2). And the Senate's 60-vote cloture rule, commonly known as the filibuster, does not apply. *See id.* Joint resolutions under the CRA disapprove only an individual rule using specific, minimal language prescribed by the statute. *See* 5 U.S.C. § 802(a). Thus, and as further explained in the Institute for Policy Integrity's amicus brief, "Congress may not express any intent in the resolution beyond disapproving the specified rule, and it cannot use a single resolution to disapprove multiple rules or to ratify unspecified rules." IPI Br. 7 (citations omitted).

EPA thus significantly overstates the effect of the 2025 CRA Resolution, which merely states that "Congress disapproves the [2024 Rule], and such rule shall have no force or effect." Pub. L. No. 119-20, 139 Stat. 71 (2025). The 2025 CRA Resolution disapproves only the 2024 Rule. *Id*. The 2024 Rule is not at issue in this litigation, and its disapproval "does not indicate congressional intent" regarding the Reclassification Rule. *Safari Club v. Haaland*, 31 F.4th 1157, 1169 (9th Cir. 2022) (citing 5 U.S.C. § 801(g)).

And, in fact, the 2024 Rule did not change whether and when sources could reclassify under the Reclassification Rule. The 2024 Rule did not "reopen" the Reclassification Rule's position that "the lack of a temporal limitation on whether a source qualifies as a major source under CAA section 112(a)(1) refuted the EPA's earlier OIAI policy," 88 Fed. Reg. 66,336, 66,343 (Sept. 27, 2023). Rather, EPA made clear those issues were "not implicated" by the 2024 Rule. 89 Fed. Reg. at 73,304; *see also id. at* 73,303-04 (explaining that EPA's authority under Section 112(c)(6) for the 2024 Rule is "distinct" from EPA's authority for the Reclassification Rule).

The 2025 CRA Resolution is thus not relevant to determining the

best reading of Section 112, and EPA's argument that Congress approved the statutory interpretation in the Reclassification Rule by implication falls flat.

## III. EPA'S FAILURE TO ADDRESS THE RULE'S IMPACT ON ITS COMPLIANCE WITH SECTION 112(C)(6) IS ARBITRARY AND CAPRICIOUS

EPA claims that because Section 112(c)(6) created a "one-time requirement for listing and a subsequent one-time requirement for completing regulation," EPA need not "ensure that 90 percent of emissions are subject to regulation on an ongoing basis." EPA Br. 31. By failing to explain how EPA's regulatory approach to Section 112(c)(6)'s statutory mandate fits with the text and structure of the statute overall, EPA "entirely fail[s] to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983).

Section 112(c)(6) states that with respect to seven of the most hazardous air pollutants, EPA "shall, not later than 5 years after November 15, 1990, list categories and subcategories of sources *assuring* that sources accounting for not less than 90 per centum of the aggregate emissions of each such pollutant are subject to [MACT

standards].” 42 U.S.C. § 7412(c)(6) (emphasis added). EPA claimed to have met that obligation in 2011 when it determined it had promulgated “sufficient” MACT or equivalent standards for each of the source categories “to meet the 90 percent requirement under … section 112(c)(6).” 76 Fed. Reg. 15,308 (March 21, 2011); *see also* 80 Fed. Reg. 31,470 (June 3, 2015). EPA found that most of the source categories needed to achieve the 90 percent requirement were major sources already subject to regulation. *See* 63 Fed. Reg 17,838, 17,839.

Given that EPA’s determination predated the Reclassification Rule, EPA necessarily relied on those sources remaining subject to MACT standards even if the sources reduced emissions below major source thresholds. *See* 89 Fed. Reg. 73,293, 73,301. Under that regulatory approach, EPA’s position that Section 112(c)(6) creates a one-time requirement for EPA to list and complete regulation satisfies its continuing obligation to “assure” that 90 percent of emissions are regulated. But EPA’s position that its one-time duty was met in 2011 only makes sense if the sources accounting for the 90 percent remain

subject to MACT standards.[2]

So, the question remains: how can EPA's 2011 list of Section 112(c)(6) source categories assure that 90 percent of emissions are subject to MACT standards if sources in those categories can now reclassify and drop out of MACT standards? EPA does not acknowledge this problem in the Reclassification Rule and therefore fails to consider an important aspect of the problem.

## CONCLUSION

The Court should grant the petitions.

[2] Intervenor-Respondents assert that "the 'reconciliation' State Petitioners seek is precluded by law." Intvr.-Resp'ts Br. 36. But the 2024 Rule is not the only way EPA can address the tension between the Reclassification Rule and EPA's compliance with Section 112(c)(6), and EPA never argued it was.

Dated: June 18, 2026

Respectfully Submitted,

STATE OF CALIFORNIA

ROB BONTA
Attorney General

/s/ *Kavita Lesser*
Kavita Lesser
Jonathan A. Wiener
Ryan Hoffman
Deputy Attorneys General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
(213) 269-6605
Kavita.Lesser@doj.ca.gov
*Attorneys for Petitioner State of California*

FOR THE STATE OF DELAWARE

KATHLEEN JENNINGS
Attorney General

/s/ Vanessa L. Kassab
Ian R. Liston
Director of Impact Litigation
Vanessa L. Kassab
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
Tel: (302) 683-8899
Vanessa.Kassab@delaware.gov
*Attorneys for Petitioner State of Delaware*

FOR THE STATE OF MARYLAND

ANTHONY G. BROWN
Attorney General

/s/ Steven J. Goldstein
Steven J. Goldstein
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
Tel: (410) 576-6414
sgoldstein@oag.state.md.us
*Attorney for Petitioner State of Maryland*

FOR THE STATE OF ILLINOIS

KWAME RAOUL
Attorney General

/s/ Jason E. James
Jason E. James
Assistant Attorney General
Illinois Attorney General's Office
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
Tel: (217) 843-0322
jason.james@ilag.gov
*Attorney for Petitioner State of Illinois*

FOR THE COMMONWEALTH OF MASSACHUSETTS

ANDREA CAMPBELL
Attorney General

/s/ Tracy Leigh Triplett
Tracy Leigh Triplett
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
Tel: (617) 727-9665
Tracy.Triplett@state.ma.gov
*Attorney for Petitioner Commonwealth of Massachusetts*

FOR THE STATE OF NEW JERSEY

JENNIFER DAVENPORT
Attorney General

_/s/ Lisa Morelli_
Lisa Morelli
Deputy Attorney General
New Jersey Division of Law
25 Market St., PO Box 093
Trenton, NJ 08625-093
Tel: (609) 900-0782
Lisa.Morelli@law.njoag.gov
*Attorney for Petitioner State of New Jersey*

FOR THE STATE OF OREGON

DAN RAYFIELD
Attorney General

_/s/ Paul Garrahan_
Paul Garrahan
Sr. Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Tel: (503) 947-4540
Paul.Garrahan@doj.state.or.us
*Attorney for Petitioner State of Oregon*

FOR THE STATE OF NEW YORK

LETITIA JAMES
Attorney General

_/s/ Ashley M. Gregor_
Ashley M. Gregor
Assistant Attorney General
Elizabeth A. Brody
Assistant Solicitor General
28 Liberty Street
New York, NY 10005
Tel: (212) 416-8454
Ashley.Gregor@ag.ny.gov
*Attorneys for Petitioner State of New York*

FOR THE STATE OF RHODE ISLAND

PETER F. NERONHA
Attorney General

_/s/ Nicholas M. Vaz_
Nicholas M. Vaz
Assistant Attorney General
Rhode Island Office of Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400
nvaz@riag.ri.gov
*Attorney for Petitioner State of Rhode Island*

FOR THE STATE OF WASHINGTON

NICHOLAS W. BROWN
Attorney General

*<u>/s/ Jennifer Slocum</u>*
Jennifer Slocum
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, WA 98504-0117
Tel: (360) 586-6741
jenna.slocum@atg.wa.gov
*Attorney for Petitioner State of Washington*

FOR THE COMMONWEALTH OF VIRGINIA

JAY JONES
Attorney General

*<u>/s/ Tillman J. Breckenridge</u>*
Tillman J. Breckenridge
Solicitor General
Mikaela A. Phillips
Assistant Solicitor General
Office of the Attorney General
202 N. 9th Street
Richmond, Virginia 23219
(804) 786-7704
solicitorgeneral@oag.state.va.us
mphillips@oag.state.va.us
*Attorneys for Petitioner Commonwealth of Virginia*

FOR THE STATE OF WISCONSIN

JOSHUA L. KAUL
Attorney General

*<u>/s/ Bradley Motl</u>*
Bradley J. Motl
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-9945
bradley.motl@wisdoj.gov
*Attorney for Petitioner State of Wisconsin*

FOR THE CITY OF CHICAGO

MARY B. RICHARDSON-LOWRY
Corporation Counsel

*<u>/s/ Myriam Z. Kasper</u>*
Myriam Z. Kasper
Deputy Corporation Counsel
City of Chicago Department of Law
2 N. LaSalle Street, S. 580
Chicago, IL 60602
Tel: (312) 744-3564
Myriam.Kasper@cityofchicago.org
*Attorney for Petitioner City of Chicago*

FOR THE CITY OF NEW YORK

STEVEN BANKS
New York City Corporation
Counsel

*/s/Alice R. Baker*
Alice R. Baker
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-2314
abaker@law.nyc.gov
*Attorney for Petitioner City of New York*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This document complies with the type-volume limitations of Federal Rule of Appellate Procedure 32 and this Court's order dated November 12, 2025, because it contains 2,416 words, excluding the parts of the filing exempted by Rule 32(f), so that the combined petitioners' briefs do not exceed 6,500 words.

2. This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), respectively, because the brief has been prepared in proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

Dated: June 18, 2026

*/s/ Kavita Lesser*
KAVITA LESSER

## CERTIFICATE OF SERVICE

I hereby certify that on this June 18, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Kavita Lesser*
KAVITA LESSER